JOHN C. DEFRANCO, ESQ. ISB 4953
ELLSWORTH, KALLAS, TALBOY &
DEFRANCO P.L.L.C.
1031 E. Park Blvd.
Boise, ID 83712
Phone: (208) 336-1843
Fax: (208) 345-8945

Attorney for Defendant - RYAN O. GITTENS

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | CR-01-52-S-BLW |
| v. | ) | SENTENCING MEMORANDUM |
| JOHN W. ANTHONY, et al. | ) | |
| Defendant. | ) | |

## The Firearm Enhancement

Ryan has objected to the application of the two level increase for possessing a firearm. (See P.S.R. Page 22, Paragraph 121 "<u>Specific Offense Characteristics</u>") He denies he ever displayed a firearm for sale, as testified to by Mr. Sam LeMar. Any guns he has ever possessed were for self-protection. He was the victim of a crime in Las Vegas.

An analogous case involves a different section of the guidelines. The Ninth Circuit has ruled in interpreting what was then section 2K2.1(b)(5), the defendant need not actually commit a crime, but must have a "firm intent to use

SENTENCING MEMORANDUM 1

the gun for felonious purposes." [1] US v. Jimison, No. 06-30417 (7-16-07). The Jimison defendant possessed a gun. He made statements that he would go "Rambo" on law enforcement if they tried to capture him. The element at issue is whether that statement constituted intent to use the gun for a separate felony crime. The government is not required to prove the defendant actually used the gun in a separate felony crime, but it would have to prove intent. The enhancement requires proof beyond simply the defendant making a foolish statement. The statement itself, going Rambo, was significant. It was too general and unspecific.

Ryan argues there must be a nexus between the possession of a firearm and the goals of the conspiracy. Jimison is offered to illustrate that mere possession should be not enough to justify an enhancement. Moreover, mere possession and a statement regarding a weapon's use was not enough under 2K2.1(b)(6). Ryan objected in paragraph 22, page 6 (Defense Objections) to the enhancement under 2D1.1(b)(1). He argues the government needs to show a defendant actively employed a firearm during the commission of a drug offense. [2] The Jimison case holding and the actively employed language found in Bailey address the use of a firearm in a federal statute, but the word use is absent in the language of 2D1.1(b)(1). Nevertheless, it would seem a nexus is required. Ryan disputes LeMar's testimony and argues his gun was for protection only.

---

[1] The Guidelines sections are different in that the enhancement under 2D1.1(b)(1). simply requires "possession" where 2K2.1(b)(6) requires "possession and use".

[2] Bailey v. United States, 516 U.S. 137, 150, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)

## 18 U.S.C. § 3553 Factors

Ryan respectfully seeks a sentence below that recommended by the now-advisory Sentencing Guidelines. Ryan maintains that such a reduced sentence would be in accordance with the statutory sentencing factors established by 18 U.S.C. § 3553. Ryan understands the mandatory minimum sentence prohibits the court from imposing a sentence of less than sixty (60) months (P.S.R. P. 26, Paragraph 150). Ryan argues his factual objection to the L.S.D. findings opens the door for a non guidelines sentence.

### § 3553 (a)(1) The Nature And Circumstances Of The Offense And The History And Characteristics Of The Defendant.

The case before the court involves a drug conspiracy. This organization sold drugs to get money to buy more drugs and perpetuate the goal of selling drugs for money. Some unique characteristics of the conspiracy were the tender ages of its members, the different drugs being sold, the multiple sources for different drugs, and lastly the absence of a singular purpose to generate wealth. One of the obvious benefits of being a member or associating yourself with members was a bountiful supply of a wide variety of drugs.

Some of the drugs involved in this case were consumed at rave parties. The rave offered a public venue for drugs to be distributed and ingested. An informal social network connected to the subculture surrounding the raves allowed for at least one enterprising individual to connect a source of supply in Las Vegas, Nevada to a small community's demand in Boise, Idaho.

Ryan Gittens stands convicted as a member of the conspiracy. Ryan's story begins where he grew up in New York City. By his own report he was an average kid. He went to high school, attended some college and maintained a

job. Ryan has never been in trouble. He may have experienced some challenges growing up without a father, but he has a strong relationship with his mother. Ryan's mom has been present for all his court appearances.

Ryan followed his mother from New York to Las Vegas. His girlfriend came with him. This relationship did not last. He met another woman and they moved in together, but that relationship ended and she moved out. Shortly thereafter, Ryan took in roommates. A culmination of unfortunate events resulted in him being evicted. Jared Anderson, an acquaintance, offered him a place to stay at his mother Melody's house. Ryan accepted his invitation. He met Jared and his friends. He thought they were interesting people.

In hindsight it's easy for Ryan to recognize the dysfunction in the lives of the other codefendants. It's startling he did not perceive it and the danger his association with the group represented to him earlier. The experiences he shared with the group make it difficult to believe he was not a member. Nevertheless, he maintains he was not.

Ryan was young, vulnerable and used drugs. A newcomer to the west, he may have been anxious to meet people and have new experiences. His living situation was unstable. The risky behaviors exhibited by the group may have seemed like an attractive and adventurous alternative to a forty-hour workweek at an entry-level job. He did not foresee the amount of grief his association would cause him.

<u>§ 3553 (a)(2)(A) To Reflect The Seriousness Of The Offense, To Promote Respect For The Law, And To Provide Just Punishment For The Offense.</u>

The crime for which Ryan was convicted is serious. It's difficult to determine if there are actual victims of the crime. The drugs brought into Idaho

job. Ryan has never been in trouble. He may have experienced some challenges growing up without a father, but he has a strong relationship with his mother. Ryan's mom has been present for all his court appearances.

Ryan followed his mother from New York to Las Vegas. His girlfriend came with him. This relationship did not last. He met another woman and they moved in together, but that relationship ended and she moved out. Shortly thereafter, Ryan took in roommates. A culmination of unfortunate events resulted in him being evicted. Jared Anderson, an acquaintance, offered him a place to stay at his mother Melody's house. Ryan accepted his invitation. He met Jared and his friends. He thought they were interesting people.

In hindsight it's easy for Ryan to recognize the dysfunction in the lives of the other codefendants. It's startling he did not perceive it and the danger his association with the group represented to him earlier. The experiences he shared with the group make it difficult to believe he was not a member. Nevertheless, he maintains he was not.

Ryan was young, vulnerable and used drugs. A newcomer to the west, he may have been anxious to meet people and have new experiences. His living situation was unstable. The risky behaviors exhibited by the group may have seemed like an attractive and adventurous alternative to a forty-hour workweek at an entry-level job. He did not foresee the amount of grief his association would cause him.

<u>§ 3553 (a)(2)(A) To Reflect The Seriousness Of The Offense, To Promote Respect For The Law, And To Provide Just Punishment For The Offense.</u>

The crime for which Ryan was convicted is serious. It's difficult to determine if there are actual victims of the crime. The drugs brought into Idaho

were sold and consumed by young people.  The cost to a community and the pain experienced by families is difficult to measure.  These drugs may have resulted in overdoses and people having to deal with addiction.  There may have been unplanned pregnancies resulting from the behaviors associated with the subculture.  Drugs helped foster some of those attitudes.  Ryan appreciates the seriousness of the offense.  The P.S.R. indicates a penitentiary sentence is appropriate.  The defense argues a shorter period of confinement achieves the goals of promoting respect for the law and punishment.

§ 3553 (a)(2)(B) To Afford Adequate Deterrence To Criminal Conduct

Ryan argues he is not predisposed to commit further crimes.  Prior to this case he was never in trouble.  Moreover, there was a long period of time in between the indictment and Ryan's turning himself over to the authorities.  During that period there were no criminal law violations.  Furthermore, Ryan has been a model inmate while incarcerated.  He treats the jailers with respect and he is afforded the same in return.  He has experienced the stress of incarceration at the Ada County Jail and remains a gentleman.  The deterrent value in this case may be limited to general deterrence for the community looking at Ryan's case.

§ 3553 (a)(2)(C) To Protect The Public From Further Crimes Of The Defendant

The incapacitation of Ryan as a means of protecting the public is a consideration without a rationale.  Ryan has demonstrated, for the most part, a willingness to live by the rules that govern society.  He respected his conditions of release on supervision awaiting two trials.  He has no criminal history.  He has respected the judicial process.  The public does not need to be protected from

Ryan.

<u>§ 3553 (a)(2)(D) To Provide The Defendant With Needed Educational Or Vocational Training, Medical Care, Or Other Correctional Treatment In The Most Effective Manner</u>

It's difficult to assess whether Ryan has achieved his full potential. He is a bright and capable person. He is industrious. He has always been employed and he is self-sufficient. It is difficult to ascertain what educational or vocational opportunities would exist for him through the Bureau of Prisons. He is willing to actively participate in any and all rehabilitative counseling targeted at drug addiction and education. Regardless, of the sentence Ryan remains optimistic for the future. He is open to any educational opportunities available through the Bureau of Prisons. He asks this court consider ordering he be incarcerated nearby his family in New York.

RESPECTFULLY submitted this 10th day of August, 2007

LAW OFFICES OF ELLSWORTH,
KALLAS, TALBOY & DEFRANCO, P.L.L.C.


By_____/s/_____
John C. DeFranco,
Attorney For Defendant

CERTIFICATE OF MAILING

I hereby certify that on this 10th day of August 2007, a true and correct copy of the foregoing instrument was e-mailed ECF/CMF to the following:

United States Attorney
AUSA Monte Stiles
Washington Group Plaza
Plaza IV, Suite 600
800 Park Boulevard, Boise, ID 83712

United States Probation & Pretrial Office
Mr. Brent Flock, USPO
Boise, ID 83724

_____/s/_____
John C. DeFranco